UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| FELICIA ANN ROBINSON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 1:18-cv-02259-JRS-DLP |
| FRANCISCAN ALLIANCE, | ) | |
| Defendant. | ) | |

**Entry on Motion for Summary Judgment**

Felicia Ann Robinson sued her former employer Franciscan Alliance, Inc. ("Franciscan"), alleging that it discriminated against her because of her race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a). Franciscan moves for summary judgment. (ECF No. 51.) Robinson opposes the motion. Because no reasonable jury could find that Robinson was discriminated against because of her race or retaliated against for complaining about race discrimination, summary judgment should be **granted** to Franciscan.

**I. Facts**

Franciscan owns and operates facilities that provide healthcare services to patients in states including Indiana. (Erickson Aff. ¶ 7, ECF No. 51-3.) In 2012, Franciscan hired Robinson to work in its Ambulatory Business Office ("ABO") in Greenwood, Indiana, as a Credentialing Specialist in a Meaningful Use position. (Robinson Dep. Tr. 18–19, 23, 27 ECF No. 51-1; Hayes Aff. ¶ 7, ECF No. 51-2.) Her supervisor was Michelle Hayes, the Credentialing Manager. (Robinson Dep. 24; Hayes Aff. ¶ 8,

ECF No. 51-2.) Meaningful Use was a Federal incentive program that paid providers for meaningfully using technology to manage electronic health records. (Hayes Aff. ¶ 8, ECF No. 51-2.) Robinson's Meaningful Use duties were administrative functions. (*Id.* ¶ 9.) All other Meaningful Use work was performed in Franciscan's Information Services Department. (*Id.* ¶ 10.)

In 2016, the government announced the end of the Meaningful Use program and replaced it with other programs. (Hayes Aff. ¶ 11, ECF No. 51-2.) As a result, Franciscan decided to move Robinson's Meaningful Use work to the Information Services Department and gave Robinson the option to stay in the Credentialing Department under Hayes as a Credentialing Specialist (her existing job title) or apply for another position within Franciscan. (Hayes Aff. ¶ 12.) Robinson chose to remain in her position as a Credentialing Specialist. (Hayes Aff. ¶ 13.)

When Robinson transitioned to full-time Credentialing Specialist duties, Katherine Wilhelm became her supervisor, and Robinson's duties changed. (Wilhelm Aff. ¶ 6, ECF No. 51-6; Robinson Dep. Tr. 33–37, 40–41, ECF No. 51-1.)[1] Credentialing refers to the process of verifying and enrolling Franciscan's medical professionals as providers with various payors, such as insurance companies. (Wilhelm Aff. ¶ 7.) Robinson received significant job training in her new role, including from Franciscan's

---

[1] Robinson's affidavit, which contradicts her earlier deposition testimony that her job duties changed when she transitioned in late 2017 from Meaningful Use to Credentialing Specialist, is insufficient to create a genuine issue of material fact. "[P]arties cannot thwart the purposes of [summary judgment] by creating 'sham' issues of fact with affidavits that contradict their prior depositions." *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996) (collecting cases).

2

Credentialing Team Lead, Wendy Whitmore. (Wilhelm Aff. ¶ 8, ECF No. 51-6.) Nonetheless, it became readily apparent that Robinson did not understand her job responsibilities. (*Id.* ¶ 9.) She made mistakes in performing basic tasks and generally had unsatisfactory work performance. (*Id.*) As Team Lead, Whitmore frequently emailed Robinson to explain errors she had made in the course of performing her duties. (*Id.* ¶ 10.) Robinson often responded to Whitmore's emails in an unprofessional, defensive manner, for example by making smart remarks or refusing to follow Whitmore's direction. (*Id.*) In March 2017, Robinson underwent additional credentialing training, but she continued to perform poorly including communicating with Whitmore in a disrespectful and unprofessional manner. (Wilhelm Aff. ¶ 13, ECF No. 51-6; *see also* Wilhelm Aff., Ex. A, ECF No. 51-6 at 14.)

On May 16, 2017, Hayes called a meeting to discuss the email exchanges between Whitmore and Robinson. (Hayes Aff. ¶ 15, ECF No. 51-2.) Robinson asked to be moved to a different department. Because she had already had extensive training in credentialing, it was optimal for Franciscan to resolve the conflicts and keep her in the Credentialing Department. (*Id.* ¶ 16.) Hayes decided that Robinson and her supervisors would have weekly meetings to discuss Robinson's questions and any issues with her performance. (*Id.* ¶ 17.) Robinson was required to maintain a spreadsheet of questions and items she would like to discuss in the weekly meetings. (*Id.* ¶ 17.) Hayes hoped this would limit the arguing in emails and allow for more beneficial in-person conversations. (*Id.*) Whitmore and Robinson agreed to improve communication and work together. (*Id.*)

3

Later that month, Whitmore emailed Robinson about multiple errors that she had made on onboarding reports, which list medical providers and their enrollment information. (Hayes Aff. ¶ 18, ECF No. 51-2.) Robinson contacted Hayes and accused Whitmore of intentionally altering the onboarding reports to make it appear that Robinson was making errors. (*Id.* ¶ 19.) Hayes investigated, ran an audit of the onboarding reports, and determined that Whitmore had not altered any reports and that Robinson's accusations were unsubstantiated. (*Id.* ¶ 20.) Hayes met with Robinson and went through each report with her in an effort to explain that Whitmore had not altered any of them. (*Id.* ¶ 21; Robinson Dep. 191, ECF No. 51-1.) Robinson continued to email Hayes, accusing Whitmore of sabotaging her work. (Hayes Aff. ¶ 21.)

Hayes sought assistance from Franciscan's System Director of the ABO, Brad Joubert. (Hayes Aff. ¶ 22, ECF No. 51-2; Joubert Aff. ¶¶ 3 & 6, ECF No. 51-4.) In early June 2017, Joubert met with Robinson to review the relevant documentation and assure her that Whitmore was not altering the reports. (Joubert Aff. ¶ 8, ECF No. 51-4.) He also counseled Robinson that Franciscan's enrollment and credentialing processes were in place for a reason and that she needed to follow those processes, and he advised her to accept the feedback from her supervisors and seek to improve. (Joubert Aff. ¶ 9, ECF No. 51-4.) Robinson agreed to move forward. (*Id.*)

On August 11, 2017, Franciscan's Human Resources Department received a formal complaint from Robinson alleging she was being harassed by her supervisors

because of her race.² (Erickson Aff. ¶ 12 & B, ECF No. 51-3.) Four days later, Joubert met with Robinson and Franciscan's Human Resources Manager, Cindy Erickson. (*Id.* ¶ 13.) Joubert and Erickson emphasized that Franciscan valued Robinson as a person and sought to understand why she felt discriminated against. (*Id.* ¶ 14.) Robinson said she wanted to be moved to a different department because she did not get along with Whitmore. (*Id.*) Robinson also said that she was "not a dumb person" and knew what she was doing, but was "constantly getting emails" from Whitmore about her performance. (*Id.*) Robinson acknowledged that no one at Franciscan had made any racial comment to her and that she felt safe at work. (*Id.* ¶ 15.) Robinson agreed that her real concern was that she did not feel respected. (*Id.*) That same day, Joubert emailed Robinson, indicating that she should submit her concerns in writing for Joubert, Erickson, and Robinson to review together and to develop a plan. (Joubert Aff. ¶ 13, Ex. A ECF No. 51-4.)

On September 1, 2017, Joubert and Erickson met with Robinson again to discuss the emails and other communications Robinson had provided them. (Joubert Aff. ¶ 14, Ex. A, ECF No. 51-4.) Robinson walked through the emails and explained her issue with each one. (*Id.* ¶ 15.) Joubert suggested a meeting between Robinson and the credentialing leadership—Hayes, Whitmore and Wilhelm—to come to an

---

² Robinson asserts that "no HR notes or exhibits show that there has ever been meetings regarding [her] attitude or work performance until after she filed claims." (Pl.'s Resp. 2, ECF No. 54). However, the undisputed evidence in the record establishes as a fact that Hayes met with Robinson in May 2017 and Joubert met with Robinson in June 2017 to discuss her work performance.

5

understanding and determine how to best move forward. (*Id.* ¶ 16.)[3] At the end of the month, Joubert and Erickson met again with Robinson in anticipation of her meeting with Hayes, Whitmore, and Wilhelm. (*Id.* ¶ 17.) Joubert explained that Hayes, Whitmore, and Wilhelm would be there to listen to Robinson, but would, in fairness, be given an opportunity to respond. (*Id.*)

On October 3, 2017, Robinson met with Hayes, Whitmore, and Wilhelm to voice her concerns. (Joubert Aff. ¶ 18, ECF No. 51-4.) Two weeks later, these supervisors were given the opportunity to respond to Robinson's concerns. (*Id.* ¶ 19.) Whitmore told Robinson that she did not mean any disrespect when she said Robinson might need more training, and that all she has ever wanted for Robinson was for her to succeed. (*Id.*) Robinson indicated that she accepted the feedback from her supervisors, and the group agreed to move forward. (*Id.* ¶ 20.) On November 10, 2017, as a follow up to Robinson's initial claim of race discrimination, Joubert wrote Robinson:

> Thank you for taking the time to meet with us regarding concerns that you presented. . . .
>
> [I]t is my impression that the issues you provided as it relates to racially targeting are not substantiated. The special attention you have been receiving as I see it has been a gift of time and attention and a way that was intended to help you succeed.

(Joubert Aff. ¶ 21 & Ex. B, ECF No. 51-4.) Robinson responded: "The appreciation comes from me to You for addressing these issues." (*Id.* & Ex. B, ECF No. 51-4.)

---

[3] Robinson's response brief asserts that Whitmore was not her supervisor. (Pl.'s Resp. 2, ECF No. 60.) Nonetheless, Robinson does not refute that Whitmore, as Team Lead, held a leadership position in the Credentialing Department, and that Robinson was required to take direction from her.

6

Joubert replied that although Robinson may not agree with her supervisors' directives or instructions, for example, logging questions onto the spreadsheet for weekly meetings, she had to follow them. (Joubert Aff. ¶ 23, ECF No. 51-4.)

Despite weekly meetings designed to improve Robinson's job performance, Robinson's work continued to be unsatisfactory, and she had other incidents of unprofessional and belligerent conduct toward her supervisors. (Hayes Aff. ¶ 23, ECF No. 51-2.) By November, Robinson was not keeping current with provider enrollments, and she had an email exchange with Whitmore in which Robinson refused to log her questions on the spreadsheet as directed. (*Id.* ¶ 24.) As a result of that email exchange, Hayes gave Robinson a list of directives to improve her work performance: demonstrate positive communication and listening skills, maintain appropriate interdepartmental communications, attend all assigned meetings, and save important questions for the weekly meetings. (*Id.* ¶ 25.) Hayes warned Robinson that any future occurrences would result in progressive disciplinary action. (*Id.*)

On December 13, 2017, Wilhelm issued a personnel counseling action to Robinson in an attempt to address deficiencies in her work. (Wilhelm Aff. ¶ 17, ECF No. 51-6.) The personnel action identified several issues, including that Robinson had been using her personal email address on payer enrollment forms contrary to Franciscan policy; had been incorrectly typing passwords for provider accounts such that they frequently became locked; and had been emailing questions to Whitmore directly, rather than putting them on the spreadsheet for weekly meetings. (*Id.*) The personnel

7

counseling action also provided Robinson with performance expectations and goals that tracked the issues leading to the action. (*Id.* ¶ 18.)

Meanwhile, Robinson applied for two promotions at Franciscan: to Credentialing Supervisor and Lead Credentialing Specialist. (Erickson Aff. ¶ 23, ECF No. 51-3.) Robinson was not chosen for the Credentialing Supervisor position because she did not have the required 1–3 years' credentialing experience. (*Id.* ¶ 25.) Although Robinson held the title of Credentialing Specialist since 2013, her duties were substantially in Meaningful Use, not Credentialing, until November 2017. (Robinson Dep. 27, 36, ECF No. 51-1.) Thus, she had less than a year of experience performing credentialing duties. (Erickson Aff. ¶ 26, ECF No. 51-3.) Franciscan selected Shaneeka Biddings, an African American, for the Credentialing Supervisor position. (*Id.* ¶ 27.) Similarly, Robinson did not have the experience that Franciscan sought for the Lead Credentialing Specialist position—experience in the Credentialing Department for the Central Indiana Region—and she was not chosen for that position. (*Id.* ¶¶ 28-29.) The candidate selected for that position did have such experience. (*Id.* ¶ 29.)

On January 8, 2018, Robinson filed her First EEOC Charge, Charge No. #470-2018-00484, alleging that the "white management staff, Michelle [Hayes], Katherine [Wilhelm] and Wendy [Whitmore]", discriminated against her because of her race. (Erickson Aff. ¶ 30 & Ex. I, ECF No. 51-3.) The Charge also alleged that, after meetings with human resources on her complaint of discrimination, Wilhelm and Whitmore retaliated against her by "writing [her] up for things that . . . other co-

8

workers are not being written up for." (*Id.* ¶ 31 & Ex. I.) Robinson received a Right to Sue Notice on April 30, 2018. (Compl. 3, ECF No. 1.)

Also in January, Biddings was promoted to the Credentialing Supervisor position and became Robinson's direct supervisor. (Erickson Aff. ¶ 7, ECF No. 51-3.) Robinson's unsatisfactory work performance and unprofessionalism continued in 2018. (Biddings Aff. ¶ 7, ECF No. 51-5.) In March 2018, Biddings issued Robinson disciplinary action to Robinson in the form of a second written warning. (*Id.* ¶ 8.) The written warning noted that the performance expectations were established with Robinson on multiple occasions; she failed to follow the directions from her leadership and established processes and procedures; and she continued to make errors and not understand the required process, terminology, and documentation required of her position. (Biddings Aff. ¶ 9 & Ex. A, ECF No. 51-5.)

In late June 2018, as a result of Robinson's work performance between April 1, 2017, and March 1, 2018, Biddings and Wilhelm gave Robinson a 0.5 out of 3.0 on her annual Performance Appraisal. (Biddings Aff. ¶ 10, ECF No. 51-5.) They rated Robinson as "Does Not Meet/Needs Improvement" in several evaluation categories, including communication and interpersonal skills; initiative, adaptability and leadership; and teamwork and cooperation. (Biddings Aff. ¶ 11 & Ex. B, ECF No. 51-5.) They noted that Robinson needed to improve in various competencies, including "Demonstrating positive communication and listening skills" and "Receive feedback in a positive way." (*Id.*)

9

On June 28, 2018, Franciscan placed Robinson on a 90-day Performance Improvement Plan ("PIP"), as it does with any employee who receives "needs improvement" ratings on a performance appraisal. (Biddings Aff. ¶ 13 & Ex. C, ECF No. 51-5.) The PIP required Robinson to, among other things, immediately follow the guidance and directives of her supervisors. (*Id.* ¶ 14 & Ex C.) The PIP indicated that, "[w]hile on an improvement plan, employees will not be considered for a transfer, promotion, incentive, bonus, or market pay increase." (*Id.* ¶ 15 & Ex. C.)

On July 24, 2018, Robinson commenced this action against Franciscan, alleging violations of Title VII of the Civil Rights Act of 1964. (*See* ECF No. 1.) Specifically, she alleges that Franciscan did not take "immediate and appropriate action when [she] first complained of racial discrimination, intimidation, retaliation, and harassment." (Compl. 2, ECF No. 1.) Robinson alleges that, as a result of the First Charge she filed, Franciscan "falsely reprimanded" her and "fail[ed] to promote" her. (*Id.*) She also alleges that, on June 26, 2018, Franciscan further retaliated against her by "den[ying] [her an] annual pay increase" and giving her "a performance evaluation lower than it should be." (*Id.*) Further, the Complaint alleges that on July 19, 2018, Robinson filed an additional charge of retaliation against Franciscan under #470-2018-03574, "status pending." (*Id.*)

Franciscan has moved for summary judgment on all of Robinson's claims. Franciscan gave Robinson notice of her right to respond and submit evidence in opposition to the summary judgment motion, advising her of the need to comply with Federal Rule of Civil Procedure 56 and Local Rule 56-1. (*See* Notice, ECF No. 53.) This

specifically included Robinson's obligation to include a "Statement of Material Facts in Dispute" section in her response brief and the consequences for failing to do so—i.e., the facts as claimed and supported by admissible evidence by Franciscan would be admitted without controversy. *See* S.D. Ind. L.R. 56-1(b), (f). (Notice, ECF No. 53 at 3–4.) Robinson, proceeding *pro se*, has opposed the summary judgment motion, but her response briefs (ECF Nos. 54 & 60) fail to comply with Local Rule 56-1 and fail to contain a "Statement of Material Facts in Dispute."[4]

## II. Discussion

Robinson alleges race discrimination and retaliation under Title VII. Franciscan moves for summary judgment. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute as to a material fact is genuine when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, a court views the facts and draws all reasonable inferences in favor of the non-moving party. *Id.* at 255.

Title VII prohibits employers from discriminating against employees on the basis of several protected characteristics, including race. 42 U.S.C. § 2000e-2(a). In

---

[4] The consequence of Robinson's failure to provide a "Statement of Material Facts in Dispute" is that she concedes Franciscan's factual recitation in its "Statement of Material Facts Not in Dispute." *See Smith v. Lanz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *see also Wackett v. City of Beaver Dam*, 642 F.3d 578, 582 n.1 (7th Cir. 2011). Robinson's noncompliance alone is sufficient reason for granting summary judgment to Franciscan on all claims against it. Nonetheless, as explained below, the Court need not rely on Local Rule 56-1(f) in finding that summary judgment in favor of Franciscan is warranted.

11

deciding whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race caused an adverse employment action, courts consider the evidence "as a whole." *Ortiz v. Werner Enters., Inc.,* 834 F.3d 760, 765 (7th Cir. 2016). However, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) remains a useful tool for presenting and assessing the evidence in discrimination cases. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018). Defendant has employed this framework, and the Court does too.

Under the *McDonnell Douglas* framework, a plaintiff claiming discrimination must show that: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate expectations; (3) her employer took an adverse employment action against her; and (4) a similarly situated employee outside the protected class was treated more favorably. *See Fields v. Bd. of Educ. of City of Chi.,* 928 F.3d 622, 625 (7th Cir. 2019); *Johnson*, 892 F.3d at 894–95. If the plaintiff makes this showing, then the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *Simpson v. Franciscan Alliance, Inc.,* 827 F.3d 656, 661 (7th Cir. 2016) (quoting *Andrews v. CBOCS W., Inc.*, 743 F.3d 230, 234 (7th Cir. 2014)).

Robinson alleges that Franciscan did not take "immediate and appropriate action when [she] first complained of racial discrimination, intimidation, retaliation, and harassment"; that Franciscan "falsely reprimanded" and "fail[ed] to promote" her; and that on June 26, 2018, Franciscan "denied [her an] annual pay increase" and gave

12

her "a performance evaluation lower than it should be." (Compl. 3.) When the evidence is considered as a whole, it is insufficient to support Robinson's race discrimination claim.[5]

The undisputed evidence in the record documents Robinson's repeated and continuing unsatisfactory job performance that justified the numerous reprimands, job counseling written warnings, and negative performance appraisal. Robinson's unsatisfactory performance included deficiencies at basic job duties for her position, unprofessional communications with her supervisors, and failure to follow directives from her supervisors and other superiors, including Whitmore and Hayes. Despite continued job counseling and efforts by her supervisors to assist Robinson, her performance did not improve. Because Robinson received "Needs Improvement" ratings on her June 2018 performance appraisal, she was placed on a PIP on June 28, 2018, and, as a result, became ineligible for a pay raise. Without supporting evidence, Robinson's personal belief that these actions were because of her race "are insufficient to give rise to a genuine factual dispute over whether [s]he was the victim of race . . . discrimination." *Abrego v. Wilkie,* 907 F.3d 1004, 1014 (7th Cir. 2018).

As for the failure to promote, Franciscan has articulated a legitimate, nondiscriminatory reason for not selecting Robinson for either credentialing position for which she applied: she lacked the necessary experience in credentialing. Although Robinson

---

[5] Although Robinson's response brief could be read as abandoning her race discrimination claim (Pl.'s Resp. 2, ECF No. 54 ("plaintiff does not need to prove discrimination to prove retaliation"), the Court addresses her claim on the merits.

held the title of Credentialing Specialist for a number of years, before the end of 2017, her duties had primarily involved Meaningful Use rather than credentialing.[6]

Furthermore, the record establishes that Franciscan took immediate, appropriate, and repeated action to address Robinson's first complaint of race discrimination. On August 11, 2017, Franciscan's Human Resources Department received a formal complaint from Robinson alleging race discrimination by her supervisors. Four days later, the Human Resources Manager Erickson and ABO System Director Joubert met with Robinson about her complaint. At that meeting, Robinson acknowledged that no one at Franciscan had made any racial comment to her, and she agreed that her real concern was that she did not feel respected. That same day, Joubert emailed Robinson, indicating that she should submit her concerns in writing for Joubert, Erickson, and Robinson to review together and to develop a plan. The three met again on September 1, 2017, for further discussion. Joubert suggested a meeting between Robinson and the credentialing leadership in an attempt to reach an understanding and determine how to best move forward. Joubert and Erickson met again with Robinson in anticipation of her meeting with the credentialing leadership. On October 3, 2017, Robinson met with Hayes, Whitmore, and Wilhelm to voice her concerns. The supervisors were given an opportunity to respond, Robinson said that she accepted their feedback, and the group agreed to move forward. Ultimately, Robinson thanked Joubert for addressing the concerns she had raised. Robinson's claim that

---

[6] Besides, Robinson's unsatisfactory job performance as a Credentialing Specialist suggests that she would be ill-suited to be a Credentialing Supervisor or Lead Credentialing Specialist.

14

Franciscan discriminated against her by failing to take action in response to her first complaint of racial discrimination finds no support in the record.

And even when the *McDonnell Douglas* framework is utilized, Robinson's race discrimination claim falls short. As set forth above, the evidence establishes that Robinson was *not* meeting Franciscan's legitimate expectations. Even after additional training and counseling, she continued to fall far below expectations in numerous ways. Robinson argues that Franciscan's "stated reason for taking action doesn't make sense" (Pl.'s Resp. 2, ECF No. 54), but the undisputed facts in the record establish that her unsatisfactory job performance and lack of experience caused Franciscan to take the actions under dispute. In addition, Robinson has not identified anyone who could be considered a similarly situated employee outside the protected class who was treated more favorably than she. Robinson maintains that Whitmore is a similarly situated coworker who was treated more favorably (Pl.'s Resp. 1–2, ECF No. 60), but the record does not suggest that Whitmore had any performance issues like Robinson. This, too, dooms her claim under the *McDonnell Douglas* framework. And Franciscan has articulated legitimate, nondiscriminatory reasons for each action that it took, and Robinson has no evidence of pretext.

Further, Robinson alleges retaliation for complaining about race discrimination and filing her EEOC Charges. Title VII prohibits employers from retaliating against an employee because he or she "has opposed any practice made an unlawful employment practice" or "has made a charge . . . or participated in any manner in in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

"To succeed on a Title VII retaliation claim, a plaintiff 'must produce enough evidence for a reasonable jury to conclude that (1) she engaged in a statutorily protected activity; (2) the [employer] took a materially adverse action against her; and (3) there existed a but-for causal connection between the two.'" *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 378 (7th Cir. 2020) (quoting *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017)).

Whether the evidence is viewed as a whole or the *McDonnell Douglas* framework is utilized, Robinson's retaliation claim does not survive summary judgment. Robinson has no evidence to raise a reasonable inference that any action taken against her was caused by her race. To the contrary, the undisputed evidence establishes that every action about which she complains was taken because of her unsatisfactory job performance, including her unprofessional communications and her inability to follow constructive feedback, and her lack of experience. Therefore, Franciscan is entitled to summary judgment on Robinson's Title VII retaliation claim.

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 51) is **granted**. Final judgment will be entered.

**SO ORDERED.**

Date: 3/24/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

FELICIA ANN ROBINSON
8103 Goldenrod Ct
Indianapolis, IN 46219

Amy Joan Adolay
KRIEG DEVAULT LLP (Carmel)
aadolay@kdlegal.com

Matthew C. Branic
KRIEG DEVAULT LLP (Carmel)
mbranic@kdlegal.com

Elizabeth Marie Roberson
KRIEG DEVAULT LLP (Carmel)
eroberson@kdlegal.com